621 A.2d 104

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**John W. DOSWELL, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 21, 1992.

Decided Feb. 17, 1993.

Robert A. Crisanti (Court-appointed), Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Claire C. Capristo, Deputy Dist. Atty., James R. Gilmore, Asst. Dist. Atty., Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION ANNOUNCING THE JUDGMENT
## OF THE COURT

FLAHERTY, Justice.

The sole issue raised on this appeal is whether appellant Doswell was denied effective assistance of counsel when his trial attorney failed to object to the prosecutor's attempt to impeach the credibility of a defense witness with an unsentenced criminal charge.

On August 4, 1989, Doswell was convicted by a jury sitting in the Court of Common Pleas of Allegheny County of two counts of rape, two counts of incest, and one count of attempted rape. On September 14, 1989, he was sentenced to an aggregate term of imprisonment of ten to twenty years. Superior Court affirmed the judgment of sentence and we granted allocatur solely to address Doswell's claim that one of his witnesses was improperly impeached.

The allegations on which this case is based are that in June, 1987 Doswell raped his daughter; in August, 1987, he attempted to rape her; and in July, 1988 he again raped her. Ms. Doswell lived at 314 Collins Street in Pittsburgh, which was also the residence of Doswell's girlfriend. Ms. Doswell testified that in August of 1987, two months after the first rape, her father entered her room, threw her on the bed and attempted to penetrate her. As Doswell was attempting to rape his daughter, his girlfriend's son, one Poindexter, entered the house and called Doswell's name, whereupon Doswell jumped up and zipped up his pants. Doswell instructed the victim to quit crying and be quiet. Poindexter then came to the victim's room, where Ms. Doswell sat with her back to the two men, and Poindexter left after two or three minutes. She testified that she did not seek Poindexter's help because the assault was over.

At trial, Poindexter testified that he did not enter the room where Ms. Doswell lived in August of 1987 and that he never entered her bedroom and saw her alone with her father. Poindexter was the only non-party defense eyewitness.

Prior to Poindexter's testimony, defense counsel questioned Poindexter for impeachment purposes about his prior criminal record. After talking with Poindexter and Poindexter's mother, defense counsel informed the court that Poindexter had been convicted of receiving stolen property and agreed that this conviction could be used to impeach Poindexter's credibility.

On cross examination, the Commonwealth questioned Poindexter as follows:

Q. Have you ever been arrested?

A. Yes, I have.

Q. For what?

A. Receiving stolen goods.

Q. What did you do for that?

A. They are going to tell me about it in September.

Q. Are you awaiting sentencing in September for stealing?

A. Receiving.

Q. Receiving Stolen goods?

A. Yes.

N.T. 118. After this exchange, the prosecutor did not pursue the impeachment further, except that at closing the prosecutor stated:

> I suggest to you it's fabrication. *You will also be mindful of the fact that [Poindexter] did admit he had a receiving stolen goods charge, and you are allowed to consider that in assessing his credibility.* There are only certain types of crimes we can introduce to you, the fact finders, but they are crimes that intend to show dishonesty, and that is why we are allowed to introduce them to you and why we went to such great length to do that.

N.T. 192. (Emphasis added.)

■ Contrary to Doswell's formulation of the issue in this case,[1] it does not concern an unsentenced conviction; rather, as the Commonwealth has pointed out in a motion to amend

---

1. Doswell formulates the issue in this case as follows:

Was Mr. Doswell denied effective assistance of counsel because his trial attorney failed to object when the commonwealth impeached

the record and its brief, it concerns only a criminal charge.[2] Poindexter, it seems, at the time of Doswell's trial, had been merely charged with a crime. Four months after Doswell's trial, Poindexter pled guilty to one count of receiving stolen property and was sentenced to a term of probation of five years. Doswell's claim, molded to these new facts, is that his counsel was ineffective in not objecting to the prosecutor's use of a criminal charge to impeach Poindexter, the defense's witness, and the only third-party eyewitness in the case.

■ As a general rule, a conviction on which sentence has not yet been imposed may not be used to impeach a witness. *Commonwealth v. Zapata,* 455 Pa. 205, 314 A.2d 299 (1974). The rationale for this rule was stated in *Zapata:*

"A conviction, using the word in its legal sense, of such crime is admissible because it tends to show the defectiveness of the moral character of the witness in respect of truthfulness, which is relevant in impeachment. . .. A verdict of guilty, without more, stands on a different plane. The most it establishes is that the jury believed the accused to be guilty. But until sentence is pronounced the issue is not necessarily closed; a new trial may be granted or judgment be [sic] arrested. In either event the verdict goes for naught. It may injure the witness in the estimation of the jury, just as in a less degree the mere indictment of the witness would. But as evidence that the moral character of the witness for truth is bad it is unreliable because of its incompleteness."

455 Pa. at 211–12, 314 A.2d at 303 (1974).

In *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987), we stated that in order to establish ineffectiveness of

Robert Lee Poindexter, a key defense witness, through the use of an unsentenced conviction?

**2.** We deferred ruling on the motion until time of oral argument. However, because the case was submitted, not argued, we have not previously addressed the motion. We now grant the motion to correct and modify the record and to modify the Commonwealth's brief. The essence of the modification is that at the time of trial, Poindexter had not been convicted of a crime with which his testimony could be impeached.

counsel, a petitioner must show (1) the underlying claims have arguable merit; (2) there was no reasonable basis for counsel's conduct; (3) petitioner was prejudiced by counsel's ineffectiveness.

Applying the requirements of *Pierce* to Doswell's claim, there is clearly arguable merit to his argument that counsel should have objected to the use of a criminal charge to impeach a defense witness. We express no opinion on whether *Zapata* remains sound law, since we need not reach that question. With respect to impeachment based on a criminal charge, however, we have no difficulty concluding that it was error to utilize a criminal charge to impeach. It is fundamental that a person who has been charged with a crime and has not been tried "is presumed innocent until *proven guilty in a court of law*," *Commonwealth v. Pierce*, 451 Pa. 190, 198, 303 A.2d 209, 214 (1973) (Emphasis in original).

Having established that Doswell's underlying claim has arguable merit, we now consider whether there was a reasonable basis for counsel's failure to object. Counsel failed to object because Poindexter and Poindexter's mother told him that Poindexter had been convicted of receiving stolen property. However, counsel did not verify the conviction or the charge, and once he knew through cross examination that sentencing had not occurred, he did not object at closing when the prosecutor referred to the fact that Poindexter "had a receiving stolen goods charge." There was no reasonable basis for these failures to object. To be effective, counsel must verify the accuracy of the criminal record at issue by checking with counsel who was involved with the trial or by checking court records. Compare, *Zapata*, 455 Pa. at 212, 314 A.2d at 303.

Further, we have no difficulty concluding that Doswell was prejudiced by trial counsel's ineffectiveness. Poindexter was the only non-party eyewitness in the case. His failure to corroborate Ms. Doswell's claim that he was present in her room in August of 1987 may well have cast doubt upon her testimony in general. But when Poindexter's credibility was attacked by reference to a non-existent conviction, Poindex-

ter's value as a defense witness was undoubtedly diminished, and Doswell was impermissibly prejudiced.

Order of Superior Court is reversed and the case is remanded for a new trial.

NIX, C.J., joins this opinion and files a concurring opinion.

PAPADAKOS, J., files a concurring opinion which is joined by LARSEN, J.

CAPPY, J., files a concurring opinion which is joined by MONTEMURO, J.

NIX, Chief Justice, concurring.

I join the majority opinion authored by Mr. Justice Flaherty; I write separately to address issues raised in the concurring opinions of Mr. Justice Papadakos and Mr. Justice Cappy. Mr. Justice Cappy writes that "it was entirely reasonable for counsel to have relied upon Poindexter's own statement that he had been convicted, particularly when, as here, that statement was confirmed by Poindexter's mother." Infra at 108 (Cappy, J., concurring). With this statement, I vehemently disagree. Defense counsel had a duty to be aware of any possible impediment that might be raised to challenge his witness. It was improper for the defense counsel to rely upon the opinion of two lay people (i.e., Poindexter and his mother) for determining whether Poindexter was impeachable for the crime of receiving stolen goods. Once he was alerted that Poindexter had been arrested, defense counsel should have undertaken his own independent investigation of Poindexter's record. As we stated in *Commonwealth v. Zapata*, 455 Pa. 205, 212, 314 A.2d 299, 303 (1974):

Even if it were established, however, that appellant had told his counsel that sentence had been imposed in the manslaughter cases, this would not have justified bringing out the convictions on direct examination without first verifying their finality, either by checking with appellant's counsel at the earlier trial or by checking the court records. Thus, counsel's action at trial can most easily be explained by a

lack of preparation. Such "explanation" does not constitute a "reasonable basis."

Thus, there being no reasonable basis for counsel's actions, and there being prejudice to the defendant, the defendant must be granted relief.

The appropriate relief to be granted in this matter is a new trial. Mr. Justice Papadakos recommends that the prosecution be prohibited from impeaching Poindexter. There is no basis in the law for that type of relief. The defendant here is entitled to a new trial with effective assistance of counsel. That does not mean that defense counsel should have the advantage of presenting unimpeachable testimony by a witness who has been convicted of the crime of receiving stolen goods. The fault in this case lies with the defense counsel and not the prosecutor. This case does not present the type of evidence of 117prosecutorial misconduct that warrants sanctions. Therefore, because the defendant was denied effective assistance of counsel which prejudiced his case, he is entitled to a new trial. It is true that Poindexter is now impeachable regarding his conviction for receiving stolen goods. The fact that the fortuitous circumstances may have made it more difficult to proceed in a retrial cannot be assigned to the Commonwealth. Thus there is no predicate for a prophylactic remedy where the original fault stemmed from former defense counsel's inadequacy and not as a consequence of prosecutorial misconduct.

Accordingly, I join Mr. Justice FLAHERTY's resolution of this case.

PAPADAKOS, Justice, concurring.

I join with the majority in remanding the case for new trial based upon counsel's ineffectiveness in not objecting to the use of a pending criminal charge to impeach a witness favorable to the defendant. I would go further and deny to the prosecution the use of the subsequent conviction and sentence of the witness at the new trial.

It must be in the nature of hornbook law that one may not use as a means of impeaching a witness the fact that the

witness has been charged with various crimes unless those charges have been proved beyond a reasonable doubt and the witness has been convicted and sentenced. How often must we repeat this before the prosecuting attorneys in this state catch on and realize that we mean it?

This is the type of case which holds up the judicial system to ridicule and leads many to believe we are only playing games in Court. Since the trial in which the prosecutor committed egregious error in asking questions of prior non-convicted charges, the witness has now been convicted and sentenced on the pending charge. Therefore, we now remand and the prosecutor will now be permitted to use the evidence to impeach the same witness.

Although I would not find that the error of the prosecuting attorney and the ineffectiveness of counsel, uncorrected by the trial judge, does not rise to a situation of placing the Appellant in double jeopardy, it certainly has caused a waste of judicial effort and expense as well as forcing the Appellant into a second trial. As suggested by the majority, the witness's unimpeached testimony may have cast sufficient doubt upon the complaining witness's testimony and a different result may have been reached by the jury. Returning the case for retrial with the right to use the conviction to impeach the witness gives to the prosecutor an advantage he did not have in the first trial. He now gets that advantage through his misconduct.

I would deny the prosecution the right to use the conviction as a means of impeaching the witness. This places both sides on a level playing field.

LARSEN, J., joins this Concurring Opinion.

CAPPY, Justice, concurring.

I join in the result reached by the majority. I write separately to express my disagreement with the rationale utilized by the majority in reaching that result.

The majority bases its finding that trial counsel was ineffective upon counsel's failure to verify the accuracy of Poindex-

ter's statement that he had been convicted of receiving stolen property. I believe it was entirely reasonable for counsel to have relied upon Poindexter's own statement that he had been convicted, particularly when, as here, that statement was confirmed by Poindexter's mother.

However, I do not believe it was reasonable for counsel to fail to object, when during cross-examination of Poindexter, counsel was made aware that Poindexter had not yet been sentenced for the underlying offense. At that point, counsel should have objected on the basis of our rationale in *Commonwealth v. Zapata*, 455 Pa. 205, 314 A.2d 299 (1974), and thus, was ineffective for not doing so. Once counsel understood that Poindexter had not been sentenced on the charge for which he was being impeached, there was no reasonable basis for counsel to fail to object.

Accordingly, for the above-stated reasons, I concur only in the result reached by the majority.

MONTEMURO, J., joins in this concurring opinion.